UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-7695-KK-KSx** | Date: | April 30, 2024 |
|---|---|---|---|

| Title: | *Ebrahim Hajihassani v. Encore Flight Corporation* |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING Plaintiff's Motion for Default Judgment [Dkt. 59]**

**I.
INTRODUCTION**

On March 28, 2024, plaintiff Ebrahim Hajihassani ("Plaintiff") filed a Motion for Default Judgment against defendant Encore Flight Corporation ("Defendant"). ECF Docket No. ("Dkt.") 59. The Court finds this matter appropriate for resolution without oral argument. See FED. R. CIV. P. 78(b); L.R. 7-15. For the reasons set forth below, Plaintiff's Motion for Default Judgment is **GRANTED**.

**II.
BACKGROUND**

**A.   PROCEDURAL HISTORY**

On September 27, 2021, Plaintiff filed a class action Complaint against Defendant asserting violations of (1) The Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, (2) California's Unfair Competition Law ("UCL"), Section 17200 of the California Business and Professions Code, and California's Consumers Legal Remedies Act ("CLRA"), California Civil Code Section 1750. Dkt. 1 ("Compl."). Plaintiff seeks damages related to Defendant's alleged unlawful and deceptive business practices. Id. ¶ 1.

///

On February 26, 2024, the Clerk of Court entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) based on Defendant's failure to answer the Complaint or otherwise appear in this action.  Dkt. 58.

On March 28, 2024, Plaintiff filed the instant Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b) ("Motion").  Dkt. 59.  As of the date of this Order, Defendant has not filed an Opposition to the Motion, or otherwise appeared in this matter.[1]

The matter thus stands submitted.

## B.   RELEVANT FACTS

As alleged in the Complaint, Plaintiff is a consumer of Defendant's flight training course services.  Compl. ¶ 10.  Defendant is "a California corporation with a principal place of business or headquarters located in Van Nuys, California[.]"  Id. ¶ 8.  Defendant "regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable."  Id.  Thus, Defendant is a "creditor" within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z § 1026.2(a)(17).  Id.

"On or around March 31, 2021," Plaintiff enrolled in a flight training course with Defendant.  Id. ¶ 10.  On or around the same day, Plaintiff "entered into a written agreement" for Defendant's flight training course (the "Contract").  Plaintiff alleges the written agreement is "a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602, and Regulation Z § 1026."  Id. ¶ 11.

Plaintiff attaches a copy of the Contract to the Complaint.  Compl. ¶ 11, dkt. 1-2, Ex. B.  The Contract provides:  "For the sum of $11,800 [Defendant] shall provide aircraft rental and instructions to Student as described below . . . (1) Down payment of $2,500 on March 31st, 2021 payable to [Defendant][;] (2) 5 monthly payments [of] $1,906 payable on the 1st of each month starting 05/1/2021."  Id.  The Contract notes "Payment includes books provided by [Defendant]."  The Contact additionally specified "[t]he services provided by [Defendant] under this Contract," which included aircraft rentals, FAA approved simulator rental, and instructor time.  Id.  Additionally, the Contract states "[t]his Contract constitutes the entire agreement of the parties with respect to the cost and amount of training provided and payments due[.]"  Id.

"[O]n or around March 31, 2021[,]" pursuant to the terms of the Contract, Plaintiff paid Defendant the "down payment" of $2,500 and "proceeded with flight instruction through Defendant's flight training academy."  Id.

After "a later review" of the Contract, Plaintiff "discovered that it actually required that the student pay Defendant a total amount greater than the represented sum of $11,800."  Id. ¶ 13 (emphasis in original).  Specifically, "a calculation of Defendant's payment structure of a down payment and [five] installments of $1,906 results in a total sum of $12,030.00."  Id.  Plaintiff alleges,

---

[1]     While Defendant filed an Answer to Plaintiff's Complaint on December 11, 2023, dkt. 11, Defendant's Answer was stricken by the Court on February 23, 2024 pursuant to Local Rule 83-2.2.2 ("Only individuals may represent themselves pro se").  Dkt. 57.

the "true total sum was intentionally omitted and deceptively concealed from Plaintiff and other similarly situated students through the Contract." Id.

Upon "further inquiry from Plaintiff regarding the payment structure in the Contract," Defendant explained the difference between the represented sum of $11,800 and the actual sum of $12,030 was that the Contract included "in house financing." Id. ¶ 14. However, Plaintiff alleges "the Contract drafted by Defendant and given to Plaintiff lacked any mention of financing whatsoever or any disclosure of important and customary financing terms such as the annual percentage rate, the financing charges, the total financing cost, and the accurate total amount Plaintiff would be required to pay to Defendant as a result of the transaction." Id. (emphasis in original).

Plaintiff alleges he "did not receive a Truth in Lending disclosure statement with the Contract or at any time after signing the Contract or prior to beginning his flight training course with Defendant." Id. ¶ 15. Plaintiff further alleges he "reasonably relied on the Contract provided by Defendant" and that his "confusion and surprise with respect to" the Contract and undisclosed financing terms "was a direct result of Defendant's misrepresentations, omissions, and failure to disclose to Plaintiff the financing terms." Id. ¶ 16. Plaintiff alleges the Contract "included an unconscionable financing provision and lacked transparency regarding the financing terms involved in the transaction." Id. ¶ 18. As a result, Plaintiff "was misled and deceived and suffered economic injury due to Defendant's representations and omissions in the Contract." Id.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a party who has failed to plead or otherwise defend. FED. R. CIV. P. 55(b)(2). The decision to grant or deny an application for default judgment is discretionary. Allstate Life Ins. Co. v. Markowitz, 590 F. Supp. 3d 1210, 1215 (C.D. Cal. 2022) (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980)).

In determining whether to enter default judgment against a party, a court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default against a defendant, the court takes "'the well-pleaded factual allegations' in the complaint 'as true.'" DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (quoting Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992)). However, "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)). In addition, allegations as to the amount of damages must be proven. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Finally, pursuant to Local Rule 55-1, an application for default judgment must be accompanied by a declaration setting forth: when, and against what party, default was entered; the pleading to which default was entered; whether the defaulting party is an infant or incompetent person; that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and that notice has been served on the defaulting party, if required.  L.R. 55-1.  The party applying for default judgment must also provide the defaulting party with notice of the application if the defaulting party has appeared in the action or the applicant seeks unliquidated damages.  FED. R. CIV. P. 55(b)(2); L.R. 55-2.

## IV.
## DISCUSSION

### A.   THE EITEL FACTORS WEIGH IN FAVOR OF GRANTING DEFAULT JUDGMENT AGAINST DEFENDANT

As an initial matter, the instant Motion satisfies the procedural requirements set forth in the Federal Rules of Civil Procedure and the Court's Local Civil Rules.  Plaintiff has submitted a declaration that complies with Local Rule 55-1 and served the Motion on Defendant as required by Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-2.  See dkt. 59-2, Declaration of Mona Amini ("Amini Decl."), ¶¶ 9-11; dkt. 59-3 at 2, Certificate of Service.

In addition, as discussed below, the Eitel factors weigh in favor of entering default judgment against Defendant.

### 1.   Possibility of Prejudice to Plaintiff

The first Eitel factor is "whether the plaintiff will suffer prejudice if default judgment is not entered."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Here, in light of Defendant's apparent unwillingness to participate in this litigation, Plaintiff "will likely be without other recourse for recovery."  See id.; see also Amini Innovation Corp. v. KTY Int'l Mktg., 768 F. Supp. 2d 1049, 1056 (C.D. Cal. 2011) (finding prejudice to plaintiff favored entering default judgment because, "[i]f the Court does not enter a default judgment, it will allow [the defendant] to avoid liability by not responding to [the plaintiff's] claims").  Thus, the Court finds the first factor weighs in favor of entering default judgment.

### 2.   Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors are "the merits of [the plaintiff's] substantive claim" and "the sufficiency of the complaint."  PepsiCo, 238 F. Supp. 2d at 1175.  These factors, which "are often analyzed together," Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010), require a plaintiff to "state a claim on which the [plaintiff] may recover," PepsiCo, 238 F. Supp. 2d at 1175.  "A complaint satisfies this test when the claims 'cross the line from conceivable to plausible.'"  Indian Hills Holdings, LLC v. Frye, 572 F. Supp. 3d 872, 886 (S.D. Cal. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)).  In performing this analysis, courts take "the well-pleaded factual allegations in the complaint as true."  DIRECTV, 503 F.3d at 854 (internal quotation marks omitted).

///

Here, as discussed below, the allegations in the Complaint are sufficient to state a claim under TILA, the UCL, and the CLRA.

### a.   First Claim for Relief: TILA, 15 U.S.C. §§ 1601

In Cause of Action One, Plaintiff alleges Defendant "fail[ed] to disclose the true cost of the transaction" and is charging Plaintiff "a hidden financing charge[.]" Compl. ¶ 38.  Specifically, Plaintiff alleges Defendants violated TILA by:

(1) "failing to make the required disclosures, including the annual percentage rate and finance charge, clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) ("Section 1632(a)") and Regulation Z § 1026.17(a)";

(2) "failing to include in the finance charge certain charges imposed by Defendant payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 ("Section 1605") and Regulation Z § 1026.4[,] and thus improperly disclosing the finance charge in the Contract and the transaction in violation of 15 U.S.C. § 1638(a)(3) ("Section 1638(a)(3)") and Regulation Z § 1026.18(d)"; and

(3) "failing to provide the required disclosures prior to consummation of transaction in violation of 15 U.S.C. § 1638(b) ("Section 1638(b)") and Regulation Z § 1026.17(b).  Compl. ¶ 39.

### i.   Applicable Law

TILA, which "was passed to achieve the informed use of credit," requires "disclosure of credit terms to consumers so that potential borrowers will be able to compare the available costs of credit." Dixey v. Idaho First Nat'l Bank, 677 F.2d 749, 751 (9th Cir. 1982) (internal quotation marks omitted); 15 U.S.C. § 1601.  The "most important" disclosures mandated by TILA "are those upon which consumers should compare competing loans, the finance charge and annual percentage rate." Id.  To effectuate this purpose, courts "construe the Act's provisions liberally in favor of the consumer and require absolute compliance by creditors." Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009) (internal quotation marks and citations omitted).

"Any creditor who fails to comply with any [TILA] requirement . . . is liable" for damages. 15 U.S.C. § 1640(a).  Under TILA, a creditor is a person who both "(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).  Under TILA, a credit sale is "any sale in which the seller is a creditor." 15 U.S.C. § 1602(h).

Under Section 1632(a), the terms "annual percentage" and "finance charge" shall be "disclosed more conspicuously than other terms, data, or information provided in connection with a transaction, except information relating to the identity of the creditor." 15 U.S.C. § 1632(a).

Section 1638(a)(3) requires "for each consumer credit transaction other than under an open end credit plan, the creditor shall disclose" the "finance charge[.]" 15 U.S.C. § 1638(a)(3).  Section

1605(a), provides "the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).

Section 1638(b)(1) requires that disclosures required under Section 1638(a) "shall be made before the credit is extended."  15 U.S.C. § 1638(b)(1).

### ii.    Analysis

Here, Plaintiff has sufficiently alleged a claim under TILA.

As an initial matter, Defendant is a "creditor" as defined by TILA because it "regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable . . . by agreement."  See 15 U.S.C. § 1602(g); Compl. ¶ 9.  Specifically, Defendant extended consumer credit to Plaintiff for which a finance charge was imposed by written agreement – namely, the Contract – to be paid in five installments by Plaintiff to Defendant.  Compl. ¶ 12; see also dkt. 1-2, Ex. B.  Moreover, Defendant is the entity to whom the debt was initially payable by agreement.  Compl. ¶ 11, dkt. 1-2. Ex. B.  Similarly, the instant transaction between Plaintiff and Defendant is a "credit sale" as defined by TILA because it was a sale in which Defendant, the seller, was a creditor.  See id.; see 15 U.S.C. § 1602(h).

In addition, Plaintiff has sufficiently alleged a TILA violation under Section 1632(a), which requires the terms "annual percentage" and "finance charge" be "disclosed more conspicuously than other terms, data, or information provided in connection with a transaction . . . ."  15 U.S.C. § 1632(a).  Plaintiff alleges – and the Contract attached to the Complaint confirms – "the Contract drafted by Defendant and given to Plaintiff lacked any mention of financing whatsoever or any disclosure of important and customary financing terms such as the annual percentage rate, the financing charges, the total financing cost, and the accurate total amount Plaintiff would be required to pay to Defendant as a result of the transaction."  Compl. ¶ 14 (emphasis in original); see also dkt. 1-2, Ex. B.  As such, Defendant's failure to disclose the credit terms clearly and conspicuously, namely, that the Contract and flight training course included "in house financing," sufficiently states a claim for violation of TILA under Section 1632(a).  See 15 U.S.C. § 1632(a).

 Plaintiff has also sufficiently alleged a TILA violation under Section 1638(a)(3) and Section 1638(b), which requires a creditor to disclose the finance charge before the credit is extended. Plaintiff alleges the Contract requested "the sum of $11,800," which included a downpayment of $2,500.  Compl. ¶ 13.  Upon further inquiry, Plaintiff alleges he paid the downpayment "and proceeded with flight instruction through Defendant's flight training academy."  Id. ¶ 12. Subsequently, Plaintiff "discovered that [the Contract] actually required . . . a total amount greater than the represented sum of $11,800[,]" namely, $12,030.  Id. ¶ 13.  Plaintiff alleges Defendant explained the difference between the represented sum of $11,800 and the actual sum of $12,030 was that the Contract included "in house financing" – a term that was never disclosed to Plaintiff prior to him signing the Contract and starting flight instruction.  Id. ¶ 14.  Thus, Defendant's failure to include "in house financing" before Plaintiff signed the Contract, paid the downpayment, and began flight instruction sufficiently states a TILA violation under Section 1638(a) and (b).

Thus, considering the merits of Plaintiff's substantive claim and the sufficiency of the Complaint, the Court finds the second and third factors weigh in favor of entering default judgment on Cause of Action One against Defendant.

>    **b.    Second and Third Claims for Relief: UCL, Section 17200 of the California Business and Professions Code and CLRA, California Civil Code Section 1750.**

In Causes of Action Two and Three, Plaintiff alleges Defendant's misrepresentations and/or omissions constituted fraudulent business practices under the UCL and violated the CLRA by "failing to disclose to Plaintiff the financing terms included in its Contract" – specifically, the additional charge for "in-house financing."  Compl. ¶¶ 14, 16, 53.

>    **i.    Applicable Law**

The UCL and CLRA "prohibit[s] unlawful, unfair, or fraudulent business practices." Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016).  The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  The CLRA prohibits specific "unfair methods of competition and unfair or deceptive acts . . . intended to result or that results in the sale or lease of goods or services to any customer."  Cal. Civ. Code § 1770(a).

The UCL and CLRA encompass both deceptive omissions and representations.  Acedo v. DMAX, Ltd., No. CV-15-02443-MMM-ASx, 2015 WL 12912365, at *7 (C.D. Cal. July 31, 2015) (citing Mui Ho v. Toyota Motor Corp., 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013)); Daugherty v. American Honda Motor Company Inc., 144 Cal.App.4th 824, 835 (2006).  For an omission to be actionable under the CLRA and UCL, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Hodsdon v. Mars, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis omitted) (quoting Daugherty, 144 Cal. App. 4th 824, 835 (2006)).  "[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Vitt v. Apple Computer, Inc., 469 F. App'x 605, 607 (9th Cir. 2012) (unpublished) (internal quotation marks omitted) (quoting Coastal Abstract Serv. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999).

Claims under the UCL and CLRA  raising allegations of fraud are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  Rule 9(b) requires the party to "state with particularity the circumstances constituting fraud[.]" FED. R. CIV. P. 9(b). Specifically, the pleading must  "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018).

///

///

>    **ii.    Analysis**

Here, Plaintiff has sufficiently pled claims under the UCL and CLRA[2] by alleging Defendant "fail[ed] to disclose to Plaintiff the financing terms included in its Contract" – specifically, the additional charge for "in house financing" – and misrepresenting the total amount of money required for books, aircraft rental, and instructions provided by Defendant.  Compl. ¶¶ 14, 16, 53; dkt. 1-2, Ex. B.

Plaintiff alleges the Contract requested "the sum of $11,800" for the training package and only upon "a later review" did he discover "it actually required that the student pay Defendant" a sum of $12,030.  Id. ¶¶ 12-13.  While Defendant claimed the difference in cost was due to "in house financing[,]" id. ¶ 14, "the Contract drafted by Defendant and given to Plaintiff lacked any mention of financing whatsoever."  Id. (emphasis in original).

Thus, Plaintiff has alleged Defendant's omission of an additional $230 for "in house financing" is contrary to the representation made by Defendant in drafting and entering into the Contract with Plaintiff.  San Miguel v. HP Inc., 317 F. Supp. 3d 1075, 1090 (N.D. Cal. 2018) (finding plaintiffs sufficiently stated a fraudulent omission claim by alleging defendant's omission was contrary to the explanations it provided in its products).  Additionally, Plaintiff has sufficiently alleged Defendant misrepresented the total cost of the training package by stating in the Contract that Defendant would provide "aircraft rental and instructions" for "the sum of $11,800," when in fact, the total sum was $12,030.  Compl. ¶¶ 12-14; dkt. 1-2, Ex. B.  Thus, Plaintiff has sufficiently alleged facts to support a fraudulent omission and fraudulent misrepresentation claim.

### 3.    Sum of Money at Stake

The fourth Eitel factor is "the amount of money at stake in relation to the seriousness of [the defendant's] conduct."  PepsiCo, 238 F. Supp. 2d at 1176-77.  The court must "assess whether the recovery sought is proportional to the harm caused by" the defendant.  Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  This factor weighs against default judgment "when a large amount of money is involved or is unreasonable in light of [the defendant's] actions."  KKMI Sausalito, LLC v. Vessel "Self Inflicted," 428 F. Supp. 3d 200, 208 (N.D. Cal. 2019) (citation omitted).

Here, Plaintiff seeks a total of $76,204.22.  See dkt. 59-1 at 10-11; dkt. 63, Amini Fees Decl., ¶ 8, Ex. A ("Billing Statement").  Plaintiff states this amount consists of the down payment of the Contract ($2,500), twice the amount of the undisclosed finance charge ($460), punitive damages ($7,500), attorney's fees ($65,114.50), and court-related costs ($629.72).  See id.  In light of the fact Plaintiff has sufficiently alleged violations of TILA, UCL, and the CLRA, the Court finds such recovery is "proportional to the harm caused by" Defendant.  See Landstar Ranger, Inc., 725 F. Supp. 2d at 921.  Specifically, Plaintiffs seek to recover only the down payment of the Contract and

---

[2]    For claims raised under the CLRA specifically, Section 1782(a) of the California Civil Code requires plaintiff to provide pre-suit notice to the defendant.  Specifically, Section 1782(a) requires that "[t]hirty days or more prior to the commencement of an action for damages pursuant to [the CLRA], the consumer" must "[n]otify the person alleged to have . . . committed . . . the particular alleged violations . . . [and] [d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of [the CLRA]."  See Cal. Civ. Code § 1782(a).  Plaintiff sent written notice to Defendant on June 17, 2021, and thus, provided pre-suit notice as required by the CLRA.  Compl. ¶ 55, dkt 1-3, Ex. C.

the statutory maximum for the finance charge in connection with the transaction as well as attorney's fees and costs.  <u>See</u> dkt. 59-1 at 10-11; Billing Statement.  Thus, the Court finds the fourth factor weighs in favor of entering default judgment.

### 4.    Possibility of Dispute Concerning Material Facts

The fifth <u>Eitel</u> factor is "the possibility of dispute as to any material facts in the case." <u>PepsiCo</u>, 238 F. Supp. 2d at 1177.  Here, because default has been entered against Defendant, <u>see</u> dkt. 59, the Court takes "the well-pleaded factual allegations in the complaint as true[,]" <u>see</u> <u>DIRECTV</u>, 503 F.3d at 854 (internal quotation marks omitted), except insofar as they pertain to the amount of Plaintiffs' damages, <u>see</u> <u>TeleVideo Sys.</u>, 826 F.2d at 917-18.  Thus, there is little possibility of a dispute concerning the material facts of Plaintiffs' allegations.  <u>Elektra Entm't Grp. Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").  The Court, therefore, finds the fifth factor weighs in favor of entering default judgment on Plaintiff's claim against Defendant.

### 5.    Excusable Neglect

The sixth <u>Eitel</u> factor is "the possibility that the default resulted from excusable neglect." <u>PepsiCo</u>, 238 F. Supp. 2d at 1177.  Here, Defendant's agent for service of process was served with the summons and Complaint on October 15, 2021.  Dkt. 9.  In addition, Defendant has been served with the instant Motion, but has failed to file an Opposition.  Dkt. 59-3.  It is, therefore, unlikely that Defendant's default resulted from excusable neglect.  <u>See</u> <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding default could not "be attributed to excusable neglect" where defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").  Thus, the Court finds the sixth factor weighs in favor of entering default judgment.

### 6.    Strong Policy Favoring Decisions on the Merits

The seventh <u>Eitel</u> factor is the strong policy favoring decisions on the merits.  <u>See</u> <u>Eitel</u>, 782 F.2d at 1472.  While the policy favoring decisions on the merits "always weighs against default judgment," <u>Amini Innovation Corp.</u>, 768 F. Supp. 2d at 1056, this factor, "standing alone, is not dispositive," <u>PepsiCo</u>, 238 F. Supp. 2d at 1177.  Here, Defendant's apparent unwillingness to participate in this litigation "makes a decision on the merits impractical, if not impossible."  <u>See</u> <u>id.</u> Thus, the policy favoring decisions on the merits does not preclude entering default judgment.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Wecosign, Inc. v. IFG Holdings, Inc.</u>, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (finding default judgment appropriate when "a decision on the merits is impossible").

///

//

///

///

B.   **PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE IN SUPPORT OF HIS REQUESTED DAMAGES WITH RESPECT TO STATUTORY DAMAGES AND THE MAJORITY OF ATTORNEY'S FEES BUT HAS NOT PRESENTED SUFFICIENT EVIDENCE IN SUPPORT OF PUNITIVE DAMAGES**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).  Thus, a court may only award damages in "the amount prayed for in the complaint" upon entry of default judgment.  Landstar Ranger, Inc., 725 F. Supp. 2d at 923.  Furthermore, allegations as to the amount of damages must be proven.  TeleVideo Sys., Inc., 826 F.2d at 917-18.  A default judgment may be entered without a hearing if the amount claimed is "capable of mathematical calculation." Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

1.   **Statutory Damages**

Under 15 U.S.C. Section 1640, with respect to damages, Plaintiff may seek "twice the amount of any finance charge in connection with the transaction[.]"  "TILA provides remedies to consumers in the form of statutory and actual damages, even for minor violations of TILA." In re Ferrell, 358 B.R. 777, 783 (B.A.P. 9th Cir. 2006), aff'd, 539 F.3d 1186 (9th Cir. 2008) (emphasis in original) (citing Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989).  "A plaintiff may recover statutory damages whether or not actual damages are proven." Id. (citing So. Discount Co. of Ga. v. Whitley, 772 F.2d 815, 817 (11th Cir. 1985) (holding that statutory damages must be imposed regardless of the trial court's belief that no actual damages resulted).  If the creditor is liable for damages, then reasonable attorney's fees and costs are also awardable to the plaintiff.  See 15 U.S.C. § 1640(a)(3).

Here, Plaintiff seeks $2,960 – consisting of the down payment of the contract ($2,500) plus twice the amount of the undisclosed finance charge ($460).  See dkt. 59-1 at 10; Billing Statement. The amount sought is consistent with Section 1640.  See id.  Accordingly, Plaintiff has established entitlement to the $2,960 in statutory damages.

2.   **Attorney's Fees and Costs**

Local Rule 55-3 establishes a schedule for calculating reasonable attorney's fees upon entry of default judgment based upon the amount of the judgment.  L.R. 55-3.  However, if a party makes a timely written request for fees in excess of those provided for by Local Rule 55-3, the court "must hear the request and award a 'reasonable' fee . . . without using the fee schedule as a starting point." Vogel v. Harbor Plaza Ctr., LLC, 893 F.3d 1152, 1159 (9th Cir. 2018).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Id. at 1158 (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).

///

///

///

Here, Plaintiff's counsel has filed a written request[3] seeking attorney's fees in excess of those provided for by Local Rule 55-3.  Specifically, counsel seeks $65,114.50 in attorney's fees based on 115.4 hours of professional services rendered, using a rate between $350 to $795 per hour.  Dkt. 63, Declaration of Mona Amini ("Amini Fees Decl."), ¶ 8, Ex. A.  The Court, therefore, must determine the reasonableness of Plaintiff's requested fee award.  See Vogel, 893 F.3d at 1159.

The Court finds the requested rates are in line with those prevailing in the relevant community for litigation associate and partners with comparable expertise.  See, e.g., Stark v. Cornerstone Legal Grp. Inc., No. 21 CV-01047-DOC-DFM, 2021 WL 8893636, at *1 (C.D. Cal. Sept. 14, 2021) (finding $450 hourly rate to be reasonable given counsel's training and experience).  However, with respect to multiple billing entries, the Court finds the number of hours billed were improperly billed or excessive.  First, counsel is not entitled to fees for clerical work.  See Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) (holding "purely clerical or secretarial tasks should not be billed" under a fee-shifting statute); see also Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009) (holding that tasks that are "clerical in nature," such as "filing" and "document organization," should be "subsumed in firm overhead").  Counsel improperly billed for clerical tasks involving filing, service, and internal calendaring in thirty entries.  See Billing Statement.  The Court, therefore, reduces each entry involving clerical tasks by 0.1 hours, amounting to a total reduction of $1,591.50.  Second, it appears counsel has excessively billed 0.2 hours for reviewing and/or sending certain emails and email responses.  See Billing Statement.  The Court finds such billing is excessive and thus, therefore, reduces each of those entries by 0.1 hours, amounting to a total reduction of $2,122.  Accordingly, the Court awards a total of $61,401 in attorney's fees.

Finally, Plaintiff requests $629.72 in costs and expenses for travel and parking, filing fees, service of process, and mailing and envelope fees.  See Billing Statement.  Counsel, however, fails to support these requests by providing receipts (or any other evidentiary support) for these costs.  Accordingly, the Court awards a total of $530.75 in costs.

### 3.      Punitive Damages

To support punitive damages under California law, a complaint must allege ultimate facts of the defendant's oppression, fraud, or malice.  See Altman v. PNC Mortg., 850 F. Supp. 2d 1057, 1085 (E.D. Cal. 2012).  Punitive damages are generally not available under the UCL, though they can be under the CLRA.  See In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007); see also Petkevicius v. NBTY, Inc., No.: 3:14-cv-02616-CAB-RBB, 2017 WL 1113295, at *10 (S.D. Cal. Mar. 24, 2017).  Where a plaintiff proves that the defendant has been guilty of fraud or malice, that plaintiff may recover punitive damages.  Cal. Civ. Code § 3294(a).  However, "a corporate entity cannot commit willful and malicious conduct; instead, 'the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.'"  In re Yahoo! Inc. Customer Data Sec. Breach Litig., 313 F. Supp. 3d at 1148; see also Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc., No. 14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014) ("[A] company simply cannot commit willful and malicious conduct – only an individual can.").

---

[3]      Counsel's written request for attorney's fees was due April 24, 2024, however counsel filed its written request on April 25, 2024.  Dkts. 62, 63.  Nonetheless, the Court will consider counsel's request.

The Court finds Plaintiff is not entitled to punitive damages.  Even assuming Plaintiff alleged such facts of oppression, fraud, or malice, this claim would still fail because a corporate entity cannot commit willful and malicious conduct, and Plaintiff has failed to identify any officer, director, or managing agent in connection with his claim.  <u>See</u> <u>In re Yahoo! Inc. Customer Data Sec. Breach Litig.</u>, 313 F. Supp. 3d at 1148.  Accordingly, the Court declines to award punitive damages.

## V.
## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Motion for Default Judgment is **GRANTED**. The Court, therefore, ORDERS judgment be entered in favor of Plaintiff against Defendant in the amount of $64,891.75.  (JS-6)

**IT IS SO ORDERED.**